# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0905

═══════════

SAN ANTONIO RIVER AUTHORITY, PETITIONER,

v.

AUSTIN BRIDGE & ROAD, L.P. AND HAYWARD BAKER, INC., RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════

**Argued September 18, 2019**

JUSTICE BLAND delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE LEHRMANN, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined.

JUSTICE BOYD filed a dissenting opinion, in which CHIEF JUSTICE HECHT, JUSTICE GUZMAN, and JUSTICE DEVINE joined.

This construction contract dispute involves repairs to the Medina Lake Dam that went over budget. The San Antonio River Authority hired Austin Bridge and Road L.P. as its general contractor for the project. The parties agreed—in bid documents proffered by the River Authority—to submit any disputes about the contract to arbitration. When disagreements about the scope of work and payment arose, Austin Bridge invoked the contract's arbitration provisions. Arbitration proceedings commenced. But after the arbitrator denied the River Authority's plea of governmental immunity, the River Authority objected to continuing the arbitration. The River

Authority then sued its contractors in state district court, contending that it had lacked any authority to agree to the contract's arbitration provisions.

We conclude that Local Government Code Chapter 271 provided that authority. Chapter 271 authorizes local governments, like the River Authority, to agree to arbitrate claims brought under the chapter. Chapter 271 further provides that the final resolution of an arbitration proceeding is "enforceable" insofar as immunity is waived. What is enforceable is authorized.

Because the River Authority possessed the authority to agree to arbitrate claims under chapter 271, and exercised that authority in this contract, we must determine whether an arbitrator may decide matters of governmental immunity. Immunity implicates subject-matter jurisdiction; it may be waived only by the legislature's consent. And enforcement of a judgment against a local government requires the exercise of state judicial power. Courts are empowered to enforce such judgments only to the extent that immunity is waived. Accordingly, the judiciary retains the duty to decide whether a local government has waived its immunity, and the extent to which any arbitration award is recoverable against a local government—the parties' agreement to arbitrate notwithstanding. Finally, we conclude that the River Authority's immunity has been waived in this case. Because the court of appeals reached similar conclusions, we affirm its judgment.

**I**

The Bexar–Medina–Atascosa Counties Water Control and Improvement District No. 1 owns and operates the Medina Lake Dam, built more than a hundred years ago.[1] About twenty

---

[1] For a brief description of the Medina Lake Dam and its storied history, see *Lance v. Robinson*, 543 S.W.3d 723, 726–27 (Tex. 2018).

years ago, the District discovered that the dam was falling apart. The Texas Legislature authorized $4 million in state funds for needed repairs.[2]

The District and four other local governments—Bexar County, the Bexar Metropolitan Water District, the San Antonio River Authority, and the Edwards Aquifer Authority—agreed to undertake the repair project through a "Cooperative Agreement." In that agreement, the District and Bexar County each promised to provide $3 million for the project. For its part, the San Antonio River Authority agreed to serve as the "project manager and contract administrator." In exchange for a fee for its services, the River Authority promised to "ensure quality construction and execution of the project" and to "manage and deliver the [project] within authorized funding levels."

After soliciting bids for the work, the River Authority awarded the construction contract to Austin Bridge. The construction contract required Austin Bridge to repair the dam within a year. In return, the River Authority agreed to pay Austin Bridge under a project-management schedule.

The contract includes an arbitration provision requiring that disputes arising under the contract "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." The contract further provides that an "award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and will not be subject to modification or appeal except to the extent permitted by Sections 10 and 11 of the Federal Arbitration Act."

---

[2] *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1409, § 17, 2009 Tex. Gen. Laws 4416, 4420. The legislature appropriated the funds to the Texas Water Development Board for the Board to then grant to the District to assist with the repairs.

Austin Bridge subcontracted part of the repair work to Hayward Baker, Inc. Hayward Baker expended more in labor and materials than projected, increasing the cost of the project. Both Austin Bridge and Hayward Baker attribute these costs to faulty specifications in the River Authority's bid documents, which resulted in change orders to the scope of their work; the River Authority disagrees. When the River Authority refused to pay these additional costs, Hayward Baker demanded arbitration against Austin Bridge, which in turn demanded arbitration against the River Authority. In its demand, Austin Bridge alleged that the River Authority breached the construction contract by failing to pay additional amounts owed under the agreement.

The River Authority appeared before the arbitrator and moved to dismiss the arbitration proceeding on the ground that governmental immunity bars the claim against it. The arbitrator denied the motion. Having lost that ruling before the arbitrator, the River Authority sued Austin Bridge and Hayward Baker in state district court. The River Authority requested that the court enjoin the arbitration proceeding and declare that governmental immunity bars the claim against the Authority. The parties moved for summary judgment on the immunity question. The trial court denied the River Authority's motion and granted Austin Bridge and Hayward Baker's, ruling that the arbitration provisions in the construction contract are enforceable.

The court of appeals reversed in part.[3] It agreed with the trial court that the River Authority had the authority to agree to arbitrate but concluded that a court, not an arbitrator, must decide whether the River Authority is immune from the claims against it and from enforcement of any resulting award.[4] The court of appeals then addressed the immunity issue, ruling in accord with

---

[3] 581 S.W.3d 245, 259 (Tex. App.—San Antonio 2017).

[4] *Id.* at 252, 258.

4

the arbitrator and the trial court that Local Government Code Chapter 271 waives the River Authority's immunity from suit.[5] The court of appeals remanded the case to the trial court with instructions to enter an order compelling arbitration and staying all other court proceedings pending the arbitrator's award.[6]

We granted the River Authority's petition for review. In this Court, the parties present three issues: (1) whether their agreement to arbitrate is enforceable, (2) if so, whether the courts must decide matters of governmental immunity, notwithstanding the agreement of the parties, and (3) whether immunity bars this breach-of-contract claim against the River Authority.

## II

"Final and binding resolution of a dispute by arbitration is an accepted and adequate alternative to its resolution by a judge or jury."[7] But it "is a matter of consent, not coercion."[8] Thus, "a party cannot be forced to arbitrate absent a binding agreement to do so."[9] When deciding whether parties must arbitrate their dispute, "the question is not which forum is quicker, cheaper, or more convenient, but which one the parties picked."[10]

The parties agree that Austin Bridge and the River Authority agreed to arbitrate any dispute arising under the construction contract. The River Authority, however, is a local government

---

[5] *Id.* at 256–57.

[6] *Id.* at 259.

[7] *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 502 (Tex. 2015).

[8] *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[9] *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018).

[10] *Merrill Lynch*, 235 S.W.3d at 187.

created under the Texas Constitution.[11] As a "political subdivision of the State [that] operates as a governmental agency performing governmental functions,"[12] the River Authority may "only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed."[13] Absent legislative authorization, the River Authority's agreement is "void ab initio,"[14] and the River Authority has "the right to declare it null, and to refuse to comply with it."[15] Accordingly, we examine whether a statute authorized the River Authority to agree to arbitrate this dispute.

## A

The legislature has granted the River Authority "all of the powers of the State of Texas" to manage the waters within its four-county territory and "to do all things as are required therefor[e]."[16] Among its powers is the power to "make contracts and to execute instruments necessary or convenient to the exercise of the powers, rights, privileges and functions conferred

---

[11] The River Authority is a conservation and reclamation district under article 16, section 59 of the Texas Constitution. *See* Act of May 3, 1937, 45th Leg., R.S., ch. 276, § 2, 1937 Tex. Gen. Laws 556, 557. The 1937 Act named the entity the San Antonio River Canal and Conservancy District. *Id.* § 1(a), 1937 Tex. Gen. Laws at 557. The 53rd Legislature changed its name to the San Antonio River Authority in 1953. *See* Act of March 30, 1953, 53d Leg., R.S., ch. 60, § 1, 1953 Tex. Gen. Laws 82, 82. Since 1961, the River Authority has been responsible for coordinating water resources along the San Antonio River and its tributaries within Bexar, Wilson, Karnes, and Goliad counties. *See* Act of May 12, 1961, 57th Leg. R.S., ch. 233, § 3, 1961 Tex. Gen. Laws 466, 468.

[12] *Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 391 (Tex. 1977).

[13] *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983); *see also Quincy Lee Co. v. Lodal & Bain Eng'rs, Inc.*, 602 S.W.2d 262, 263–64 (Tex. 1980) (holding local governmental entities "can exercise no authority that has not been clearly granted by the Legislature"); *Tri-City Fresh Water Supply Dist. No. 2 of Harris Cty. v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) ("The powers of such districts are measured by the terms of the statutes which authorized their creation, and they can exercise no authority that has not been clearly granted by the legislature."); *cf.* TEX. CONST. art. XVI, § 59(b) (granting conservation and reclamation districts "authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law").

[14] *Clear Lake*, 549 S.W.2d at 391.

[15] *City of Brenham v. Brenham Water Co.*, 4 S.W. 143, 149 (Tex. 1887).

[16] Act of April 8, 1981, 67th Leg., R.S., ch. 60, § 3, 1981 Tex. Gen. Laws 123, 123.

6

upon it,"[17] including "contracts with municipalities and others involving the construction of reservoirs [and] dams" and "provisions for the operation, maintenance and ownership of such properties."[18] As the construction contract in this case provides for repairs to the Medina Lake Dam, the legislature generally has authorized the River Authority to agree to it. The River Authority asserts, however, that its agreement to arbitrate required additional, express authorization.

Austin Bridge responds that Local Government Code Chapter 271 provides that authorization. Chapter 271, it argues, vests courts with jurisdiction to adjudicate a claim for breach of a contract with a local governmental entity. The chapter defines "adjudication" to include both "the bringing of a civil suit and prosecution to final judgment" and "the bringing of an authorized arbitration proceeding and prosecution to final resolution in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings."[19] Section 271.154 of the chapter further provides that agreements to arbitrate claims brought under the subchapter are "enforceable."[20]

**B**

The legislature has granted the River Authority broad powers to contract. Broad as it is, that enabling legislation does not mention arbitration (or any other specific contract provision).

---

[17] *Id.* § 3(j), 1981 Tex. Gen. Laws at 127.

[18] *Id.* § 3(c)(10),1981 Tex. Gen. Laws at 126.

[19] TEX. LOC. GOV'T CODE § 271.151(1).

[20] *Id.* § 271.154. Although Austin Bridge has invoked chapter 271 throughout these proceedings, it did not specifically address section 271.154. After oral argument, the Court ordered supplemental briefing to address section 271.154, which the parties provided.

7

Until recently, no need existed to determine whether a local government could agree to arbitrate in an otherwise authorized contract.

No need because, until chapter 271, governmental immunity shielded a local government from enforcement of its contract obligations.[21] Though a local government could sue a contractor, a contractor had no corresponding ability to sue a local government for breach of its contract obligations without "legislative consent"—by statute or resolution.[22] Thus, at the time the legislature empowered the River Authority to agree to a contract to repair and maintain the dam, the prospect of a claim against the River Authority for breach of that contract was dim. The availability of arbitration to resolve the claim was as ephemeral as the claim itself.

But times change. First, the legislature codified its pro-arbitration public policy stance and recognized an array of arbitration procedures.[23] It later applied these procedures to some government disputes,[24] encouraging local governments to "develop and use alternative dispute resolution procedures" consistent with statutorily-recognized practices.[25] Second, the legislature

---

[21] *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016) ("Political subdivisions of the state . . . share in the state's inherent immunity.").

[22] *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002); *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001) ("[T]here is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature.").

[23] *See generally* TEX. CIV. PRAC. & REM. CODE §§ 154.001–.073; *see also id.* § 154.002 ("It is the policy of this state to encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through voluntary settlement procedures.").

[24] TEX. GOV'T CODE § 2009.003(1) ("'Alternative dispute resolution procedure'[in the Governmental Dispute Resolution Act] includes: (A) a procedure described by Chapter 154, Civil Practice and Remedies Code; and (B) a combination of the procedures described by Chapter 154, Civil Practice and Remedies Code.").

[25] *Id.* § 2009.051(a); s*ee also id.* § 2009.002 ("It is the policy of this state that disputes before governmental bodies be resolved as fairly and expeditiously as possible and that each governmental body support this policy by developing and using alternative dispute resolution procedures in appropriate aspects of the governmental body's operations and programs."). However, these provisions are not independent statutory authorization for local governments to submit to binding arbitration. *Id.* § 2009.005(c) ("Nothing in this chapter authorizes binding arbitration as a method of alternative dispute resolution.").

began to authorize, and sometimes require, arbitration in government-related contexts.[26] And finally, the legislature enacted Local Government Code Chapter 271, which, for the first time, made local governments accountable for their obligations in goods-and-services contracts by granting a limited waiver of immunity for claims brought within the chapter's parameters.[27] To remove doubt about whether arbitration is among those obligations, chapter 271 provides that agreements to arbitrate claims brought under the chapter "are enforceable."[28]

Titled "Purchasing and *Contracting Authority* of Municipalities, Counties, and Certain Other Local Governments," chapter 271 broadly addresses a local government's authority to finance the acquisition of public property and to contract for personal property.[29] This case involves subchapter I, titled "Adjudication of Claims Arising Under Written Contracts with Local Government Entities."

---

[26] *See, e.g.*, TEX. EDUC. CODE § 29.012(d)(6) (requiring specified state agencies to enter an agreement that provides for binding arbitration); TEX. GOV'T CODE § 2258.053(a) (requiring disputes over penalties assessed against government contractors that fail to pay prevailing wage rates to be resolved through binding arbitration); TEX. HEALTH & SAFETY CODE § 242.252(a) (permitting certain disputes between state agency and nursing facilities to be resolved through binding arbitration as an alternative to a contested case hearing or judicial proceeding); *id.* § 247.082(a) (providing that assisted living facilities may invoke binding arbitration in response to certain enforcement actions); *id.* § 775.0221(a) (requiring municipalities and emergency-services districts to resolve certain territorial disputes using binding arbitration); TEX. INS. CODE § 2210.554(a) (permitting persons insured by Texas Windstorm Insurance Association to purchase an endorsement requiring binding arbitration of coverage disputes); TEX. LOC. GOV'T CODE § 142.064(b) (permitting public employers and police officer associations to provide for binding arbitration in meet-and-confer agreements); *id.* § 242.0015(a) (requiring counties and municipalities to resolve certain disputes over extraterritorial jurisdiction through binding arbitration); TEX. OCC. CODE § 2027.056(b) (permitting greyhound racetrack association and state greyhound breed registry to resolve certain disputes by binding arbitration); TEX. TAX CODE § 41A.01 (permitting property owners to resolve certain appraisal-review-board appeals through binding arbitration); TEX. TRANSP. CODE § 451.756(b) (permitting certain agreements between public employers and peace officers to provide for binding arbitration).

[27] TEX. LOC. GOV'T CODE § 271.152 (emphasis added).

[28] *Id.* § 271.154.

[29] *See generally id.* §§ 271.001–.908.

Subchapter I is a framework for resolving contract disputes between governmental entities and private parties by (1) providing a limited waiver of governmental immunity "for the purpose of adjudicating a claim for breach of [a] contract" against local governments,[30] (2) setting limits on damages for those claims,[31] and (3) clarifying that "contractual adjudication procedures" to resolve those claims are "enforceable."[32]

"Adjudication" is a defined term under chapter 271. "Adjudication" means "the bringing of a civil suit and prosecution to final judgment . . . and includes the bringing of an authorized arbitration proceeding and prosecution to final resolution in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings."[33] Under this definition, arbitration—to a "final resolution"—is unmistakably authorized as an "adjudication" for which immunity can be waived.

Section 271.154 further emphasizes that contractual arbitration provisions "are enforceable" unless they conflict with another provision:

> Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.[34]

Section 271.154 begins with the term "adjudication," which is expressly defined to include "an authorized arbitration proceeding and prosecution to final resolution in accordance with any

---

[30] *Id.* § 271.152.

[31] *Id.* § 271.153.

[32] *Id.* § 271.154.

[33] *Id.* § 271.151(1).

[34] *Id.* § 271.154.

mandatory procedures established in the contract."[35] The legislature combines "adjudication" with "procedures" in an open-ended reference to provisions that govern disputes arising under the contract—making these provisions "enforceable." An "adjudication" may be brought to "final judgment" or "final resolution," including through arbitration.[36] Arbitration is an "adjudication procedure" under the plain meaning of the statute, even without the clarification supplied by the statutory definition of "adjudication." To remove any argument, the legislature supplied that definition, reinforcing the unremarkable proposition that arbitration "to a final resolution" is an "adjudication procedure."[37]

We should not, as the River Authority suggests, stretch "authorized arbitration proceeding" in section 271.151 to require authorization outside chapter 271. The River Authority's reading is belied by a separate reference to authorization in section 271.252 that explicitly includes the distinction the River Authority suggests we should imply in section 271.151: in section 271.152, the legislature waives immunity for a local government entity "that is authorized *by statute or the*

---

[35] *Id.* § 271.151(1).

[36] *Id*.

[37] The dissenting justices would read section 271.154 to enforce undefined *procedures* associated with arbitration but not any "final resolution" as contemplated by the definition of "adjudication" found in section 271.151. The dissent reaches this conclusion because section 271.154 refers to arbitration as a "proceeding," as distinguished from a "procedure," and reasons that section 271.154 therefore "addresses contractually incorporated '[a]djudication *procedures*' that may apply to an authorized 'arbitration *proceeding*' and makes those procedures (but not the arbitration proceeding itself) 'enforceable.'" *Post* at ___ (quoting *id.* § 271.154). Thus, "adjudication procedures" consist only of "procedural 'requirements'—such as a notice requirement or a requirement that parties engage in nonbinding dispute resolution—that the party must satisfy '*before* bringing a suit to an arbitration *proceeding*.'" *Id.* This construction insists that "procedures" and "proceedings," though they derive from the same root word, are mutually exclusive categories. However, it ignores the supplied statutory definition of "adjudication," which includes an "arbitration proceeding" brought to a "final resolution." *See* TEX. LOC. GOV'T CODE § 271.151(1). The subsection rendering arbitration proceedings "enforceable" neither conscribes adjudication procedures nor excludes binding arbitration—rather, that subsection expressly lists it. *See Sneed v. Webre*, 465 S.W.3d 169, 190 (Tex. 2015) (stating that usage of the words "includes" or "including" "does not create a presumption that components not expressed are excluded" (quoting TEX. GOV'T CODE § 311.005(13))). Applying the statutory definition of "adjudication" results in the sensible reading that binding arbitration to a "final resolution" is a type of enforceable "adjudication procedure."

*constitution* to enter into a contract."[38] The legislature could have similarly modified "authorized" in section 271.151, but it did not. Instead, "authorized arbitration proceeding" in section 271.151 refers to the contract governed by the subchapter: arbitration is authorized "in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings."[39] Imposing additional "authorization" marginalizes the obligation that the legislature expressly enforces. "Authorized" is best read to refer to the clause that modifies it in the statutory text: authorized "in accordance with the contract subject to this subchapter."

Section 271.154 reinforces this construction. To "enforce" is to "compel observance of or obedience to."[40] And "enforceable" means "*capable* of being enforced."[41] "Authorized" means "[t]o grant authority or power to" or "[t]o give permission for."[42] "Capable of being enforced" includes the authorization to do so—the legislature would not compel observance of the unauthorized. Section 271.154 does not contemplate adjudication procedures that *may* be enforceable; it declares they "*are* enforceable except to the extent those procedures conflict with the terms of this subchapter."[43] Making contract provisions "enforceable" is itself an authorization. Chapter 271.154's directive grants "authority or power to" or "give[s] permission" to local governments to agree to arbitration in contracts within chapter 271's scope.[44]

---

[38] Tex. Loc. Gov't Code § 271.152 (emphasis added).

[39] *Id.* § 271.151(1).

[40] *See Enforce*, American Heritage Dictionary of the English Language (5th ed. 2016).

[41] *See Enforceable*, Webster's Third New International Dictionary (2002) (emphasis added).

[42] *See Authorized*, American Heritage Dictionary of the English Language (5th ed. 2016).

[43] Tex. Loc. Gov't Code § 271.154 (emphasis added).

[44] *Authorize*, American Heritage Dictionary of the English Language (5th ed. 2020); *see also Authorize*, Webster's Third New International Dictionary (2002) ("to endorse, empower, justify, or permit by or as if by some recognized or proper authority").

Finally, one evident purpose of subchapter I is to permit local governments to agree to alternative dispute resolution for claims allowed to proceed against a local government under the subchapter's waiver of immunity.[45] Section 271.152 provides a prospective waiver of governmental immunity for breach-of-contract claims against local governments for contracts involving goods and services. The waiver is "for the purpose of adjudicating a claim" under the subchapter:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this chapter.[46]

Chapter 271 altered decades of one-sided bargains, in which local governments were wholly immune from breaches of their obligations.[47] Before chapter 271, there was no "adjudication" of a contract claim against a local government.[48] Now, a local government can be held to promises made within the chapter's framework. Arbitration can be a part of that bargain.[49] Accordingly, we hold that the River Authority was authorized to agree to arbitrate disputes arising from its contract with Austin Bridge, within chapter 271's expressed limits.

---

[45] The dissenting justices view chapter 271 as wholly about immunity and not at all about adjudication. The subchapter is better read to authorize contracting parties to devise methods for dispute resolution in their contracts for claims now viable through the subchapter's limited waiver of immunity. Arbitration to a "final resolution" is one method the statute expressly authorizes.

[46] TEX. LOC. GOV'T CODE § 271.152.

[47] *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002).

[48] *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001).

[49] *See* TEX. LOC. GOV'T CODE §§ 271.151–.154.

## III

We turn to the question of who must decide whether the River Authority's immunity is waived for this breach-of-contract claim—the arbitrator or the trial court.

The construction contract provides that "[a]ll claims, disputes, and other matters" arising under it "shall be decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." The Construction Industry Arbitration Rules permit an arbitrator to decide the validity and scope of an arbitration agreement:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.[50]

Austin Bridge argues that these rules vest the arbitrator with "power to rule on his or her own jurisdiction," including the jurisdictional question of whether the River Authority has governmental immunity from Austin Bridge's claims. The River Authority responds that a court must answer whether chapter 271 waives the Authority's immunity because the question implicates the court's subject-matter jurisdiction to stay or compel arbitration and to enforce any judgment confirming an award against a local government.[51]

The trial court ruled that the parties' agreement required the arbitrator to decide the governmental immunity question. The court of appeals reversed the trial court on this ground,

---

[50] *See* AM. ARBITRATION ASS'N, CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURES, R-9(a), 18 (2015), https://www.adr.org/sites/default/files/ConstructionRules_Web.pdf (last accessed Apr. 30, 2020).

[51] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) ("In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit.").

holding that a court must determine matters of governmental immunity.[52] We agree with the court of appeals. Because immunity bears on the trial court's jurisdiction to stay or compel arbitration, and to enforce an arbitration award in a judgment against a local government, a court must decide whether governmental immunity is waived. An agreement to arbitrate is unenforceable against a local government to the extent it purports to submit immunity questions to an arbitrator.

The United States Supreme Court has explained that whether a dispute is arbitrable is ordinarily a threshold matter for a court to decide.[53] Austin Bridge observes, however, that parties may supplant this general rule with "clear and unmistakable evidence"[54] that the parties agreed to submit arbitrability questions to an arbitrator.[55] Because arbitrators "derive their jurisdiction over disputes from the parties' consent and the law of contract," it further argues, courts must defer to an arbitrator's decision about the scope of their agreement if the parties assigned that matter to the arbitrator.[56] The River Authority responds that it had no authority to assign immunity as a matter

---

[52] 581 S.W.3d 245, 252–53 (Tex. App.—San Antonio 2017).

[53] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942–43 (1995); *see also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) ("The U.S. Supreme Court has explained that there are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. . . . The default rule for the third question is that arbitrability is a threshold matter for the court to decide." (first citing *id.* at 942, and then citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008))).

[54] *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631–32 (Tex. 2018); *see also RSL Funding*, 569 S.W.3d at 121 ("[A]s parties have a right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator.").

[55] *See, e.g.*, *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App.—Fort Worth 2009, pet. denied) (holding that the agreement in that case did not "clearly and unmistakably" reflect the "parties' intent to refer the issue of waiver by litigation conduct to the arbitrator" because "[t]he agreement is silent as to whether the parties intended to incorporate the current rules, silent as to whether the arbitrator is to decide issues of 'arbitrability,' and silent specifically regarding who is to decide waiver, repudiation, or similar matters"); *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 41–42 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[T]he agreement's mere reference to the AAA's rules does not provide clear and unmistakable evidence of the parties' delegation of issues of arbitrability to an arbitrator.").

[56] *RSL Funding*, 569 S.W.3d at 122; *see also First Options*, 514 U.S. at 943 ("Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision

to be arbitrated, and thus "the proper procedure is for a court to first determine if there is a binding arbitration agreement that delegates arbitrability to the arbitrator."[57]

Governmental immunity implicates jurisdiction to allow a suit to proceed and to enforce an award against a governmental entity in a judgment.[58] A court lacks jurisdiction to compel or stay arbitration, or to enforce a later arbitration award, if a governmental entity is immune from any suit or liability.[59] The parties cannot contractually agree to define a court's jurisdiction. A court's subject-matter jurisdiction "cannot be conferred upon any court by consent or waiver."[60] Thus, the judiciary must determine in the first instance the existence and boundaries of governmental immunity.[61] And, as in chapter 271, the legislature determines whether that immunity is waived and to what extent.[62]

---

about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.").

[57] *See RSL Funding*, 569 S.W.3d at 121.

[58] *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. . . . Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."); *First Options*, 514 U.S. at 943–44; *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017) (holding that, in a motion to compel arbitration, when one party challenges the ripeness of the dispute, the court must first "'look through' the petition to compel arbitration in order to determine whether the underlying dispute presents a sufficiently ripe controversy to establish federal jurisdiction").

[59] *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (recognizing that "[s]overeign immunity from suit defeats a trial court's subject matter jurisdiction"); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012) ("Sovereign immunity bars suits against the state and its entities, and this immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver."); TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

[60] *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (quoting *Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943)).

[61] *See City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) ("[T]he boundaries of sovereign immunity are determined by the judiciary . . . ." (citing *City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2007))).

[62] *Id.* ("[W]aivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature.").

A trial court must have jurisdiction to enforce an agreement to arbitrate and to enter any award. Its jurisdiction to do so in this case is bounded both by the authority vested in a local government and by the legislature's waiver of governmental immunity in chapter 271. Accordingly, an arbitrator may not decide the River Authority's immunity or confer jurisdiction on the trial court; it is the non-delegable role of the judiciary to determine whether governmental immunity exists, whether such immunity has been waived, and to what extent.[63]

## IV

Having concluded that a court must determine whether immunity is waived, we turn to that question. The court of appeals held that Local Government Code Chapter 271 waives the River Authority's immunity from suit for this breach-of-contract claim. We agree.

Chapter 271 waives a local governmental entity's immunity from breach-of-contract claims brought under the chapter. An authorized local government entity[64] "that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter."[65] A "contract subject to this subchapter" means "a written contract stating the

---

[63] *See Kansas City S. v. Port of Corpus Christi Auth. of Nueces Cty.*, 305 S.W.3d 296, 303–04 (Tex. App.—Corpus Christi-Edinburg 2009, pet. denied) ("[I]f a party is immune to a suit . . . it is also immune to the judicial enforcement of any arbitration award based upon that same claim. Just as it is the judiciary's proper role to determine whether a claim is covered by an arbitration agreement, . . . it is similarly the primary function of the courts to determine whether a government defendant retains immunity as to any arbitration award." (citing TEX. CIV. PRAC. & REM. CODE § 171.021(b))); *Lower Colo. River Auth.*, 858 F.3d at 922–24 (explaining that a federal court that lacks subject-matter jurisdiction lacks jurisdiction to compel arbitration).

[64] The parties do not dispute that the River Authority is a local government for purposes of chapter 271. *See* TEX. LOC. GOV'T CODE § 271.151(3).

[65] *Id.* § 271.152; *see also id.* § 271.153 (limiting awards and damages).

17

essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."[66]

The River Authority contends that chapter 271's waiver does not apply because the construction contract required Austin Bridge to provide services to the District, which owns and operates the Medina Lake Dam, not the River Authority. The River Authority further suggests that it merely acted on the District's behalf as project manager and contract administrator. Austin Bridge responds that it provided services to both. The parties do not dispute that the contract states its essential terms.

We have interpreted the scope of chapter 271's waiver of immunity several times in recent years.[67] "Services" in section 271.151(2)(A) is "broad enough to encompass a wide array of activities" and "includes generally any act performed for the benefit of another."[68] But chapter 271 does not apply to a contract that provides only an "indirect, attenuated" benefit to the local government.[69]

Applying these principles, we held in *Byrdson Services., LLC v. South East Texas Regional Planning Commission* that a government contractor's services that primarily benefitted a third party also directly benefitted the government, because the contractor performed services the government was "otherwise obligated to perform itself."[70] When a local government "relieve[s]

---

[66] *Id.* § 271.151(2)(A).

[67] *See, e.g.*, *Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297 (Tex. 2014); *City of Houston v. Williams*, 353 S.W.3d 128 (Tex. 2011); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 (Tex. 2010); *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320 (Tex. 2006).

[68] *Kirby Lake*, 320 S.W.3d at 839.

[69] *Id.* (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, pet. denied)).

[70] *Byrdson Servs., LLC v. S. E. Tex. Reg'l Planning Comm'n*, 516 S.W.3d 483, 486 (Tex. 2016).

itself of contractual obligations" to provide "real and direct services" through securing that performance by a contractor, the contract may be subject to chapter 271.[71]

The River Authority argues that our reasoning in *Byrdson* is inapplicable here because the River Authority had no obligation to repair the Medina Lake Dam. Instead, the District, as owner and operator of the dam, is charged with repairing and maintaining it. The Cooperative Agreement required the River Authority to manage the project, not to repair the dam. As a result, the River Authority contends, its contract required Austin Bridge to provide construction services to benefit the District, not the River Authority.

While the project unquestionably benefitted the District, we conclude that the contract also required Austin Bridge to provide services that directly benefitted the River Authority. The contract required Austin Bridge to perform management and oversight tasks that fall within the Authority's project management role. In fulfilling the Authority's role as "project manager and contract administrator,"[72] the contract required that Austin Bridge:

- report conflicts or discrepancies in contract documents to the River Authority
- deliver a progress schedule to the River Authority
- provide insurance certificates to the River Authority
- provide the River Authority with evidence of the kind and quality of goods used on the project
- deliver specifications, drawings, and samples to the River Authority
- notify the River Authority of deviations from contract requirements

---

[71] *Id.* at 487.

[72] Noting that the Cooperative Agreement between the five governmental bodies required the River Authority to "ensure quality construction and execution of the project" and to "manage and deliver the [project] within authorized funding levels," Austin Bridge argues that the River Authority was obligated to ensure that the dam was properly repaired. And, Austin Bridge argues, the River Authority acknowledged this obligation in its contract with Austin Bridge by, for example, referring to itself as the project "Owner" and providing that the contract "be performed for" the River Authority. Because the contract required Austin Bridge to provide services to the River Authority as the contract administrator and project manager, benefitting the River Authority by enabling it to fulfill its obligations in those capacities, we need not address these further reasons for waiver of immunity.

- provide the River Authority with an itemized "cost breakdown together with supporting data"
- notify the River Authority of "readiness of the Work for all required inspections, tests, or approvals"
- furnish labor, materials, and equipment necessary to make the Work available "for observation, inspection or testing as [the River Authority] may require"
- provide payroll transcripts and payment applications to the River Authority

The contract may primarily require Austin Bridge to provide construction services to the District, but it further requires Austin Bridge to provide services directly for the River Authority, fulfilling the River Authority's management obligations. Even if these services were not the contract's "primary purpose,"[73] they were neither "indirect" nor "attenuated."[74] Accordingly, we hold that the contract provided goods and services to the River Authority as chapter 271 requires.[75]

Finally, the River Authority contends that chapter 271 does not waive its immunity because Austin Bridge seeks consequential damages. Section 271.153 provides that any recovery under the chapter "is limited to the following:"

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.[76]

---

[73] *See Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 302–03 (Tex. 2014).

[74] *See Byrdson*, 516 S.W.3d at 486; *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010).

[75] *See* TEX. LOC. GOV'T CODE §§ 271.151–.152.

[76] *Id.* § 271.153(a)(1)–(4).

Further, any monetary recovery "may not include . . . consequential damages, except as expressly allowed under Subsection (a)(1) . . . ."[77] These provisions "define the scope of [chapter 271's] waiver of immunity," so the chapter "does not waive immunity from suit on a claim for damages not recoverable under Section 271.153."[78]

We explained in *Zachry Construction Corp. v. Port of Houston Authority of Harris County* that "the balance due and owed" by the local government under the contract is "the amount of damages for breach of contract payable and unpaid," even if the amount is not "stated in," "expressly provided for in," or even "ascertainable from" the contract.[79] And we acknowledged more recently that section 271.153 "expressly provides that the damages awardable on a contract claim for which chapter 271 waives governmental immunity cannot include 'consequential damages, except as expressly allowed under Subsection (a)(1).'"[80] Subsection (a)(1) permits recovery of "compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration,"[81] but subsection (b)(1) precludes recovery of any other type of consequential damages.[82]

The River Authority contends that it agreed to pay "unit prices" for each task, and Austin Bridge's claim seeks consequential damages because the cost of extra materials and labor used to complete each task is above the unit prices in the contract. According to the River Authority, these

---

[77] *Id.* § 271.153(b)(1).

[78] *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 108, 110 (Tex. 2014).

[79] *Id.* at 110–12, 114.

[80] *Dall./Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 374 (Tex. 2019) (quoting TEX. LOC. GOV'T CODE § 271.153).

[81] TEX. LOC. GOV'T CODE § 271.153(a)(1).

[82] *Id.* § 271.153(b)(1); *see also Zachry*, 449 S.W.3d at 112.

payments are not part of "the balance due and owed . . . under the contract," TEX. LOC. GOV'T CODE § 271.153(a)(1), but instead are "for costs already included in the calculation of the unit prices."

In response, Austin Bridge asserts that the damages it seeks are payments for "work actually performed" and were made necessary by the River Authority's faulty design specifications. For example, Hayward Baker claims $255,000 for unpaid work it insists that it performed under the contract's unit-priced items, along with $1,314,673 in work that it alleges it performed because of "change orders, defective specifications, and required changes to those specifications." Austin Bridge claims that it seeks to recover "its costs for work performed in accordance with the [contract] for which [Austin Bridge] has not been paid."

Consequential damages are those that "'result naturally, but not necessarily,' from the defendant's breach, and are not 'the usual result of the wrong.'"[83] In contrast, direct damages are those that the breaching party is "'conclusively presumed' to have foreseen as a result of its breach because they 'are the *necessary* and usual result of,' and 'flow naturally and *necessarily* from,' that wrongful act."[84] Though the parties' arguments have yet to be fully developed on this point, we conclude that Austin Bridge has alleged some damage that flows naturally and necessarily from the River Authority's alleged breach. Austin Bridge alleges that the River Authority breached the contract by failing to pay for materials and labor required to complete the project. The heart of the parties' dispute is whether the contract in fact required the River Authority to pay for these additional costs. That question—which the parties do not present and we do not address—reaches

---

[83] *Vizant*, 576 S.W.3d at 373 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)).

[84] *Id.* (quoting *Arthur Anderson*, 945 S.W.2d at 816).

22

the merits of Austin Bridge's breach-of-contract claim. If Austin Bridge is correct in its position, then the damages it seeks flow from the River Authority's failure to pay amounts due and owed under the contract. Based on the parties' characterizations of Austin Bridge's claims, we conclude that Austin Bridge seeks direct damages for amounts it alleges are "due and owed by the local governmental entity under the contract."[85] Accordingly, we hold that chapter 271 waives the River Authority's immunity from suit on those claims.

* * *

We hold that Local Government Code Chapter 271 authorized the River Authority to agree to arbitrate disputes arising from its construction contract with Austin Bridge. We further hold that a court must decide a local government's immunity from suit and liability, notwithstanding a contractual agreement to the contrary. Thus, the River Authority could not agree to permit an arbitrator to decide questions of governmental immunity. Finally, chapter 271 waives the River Authority's immunity from suit for Austin Bridge's breach-of-contract claim. Accordingly, we affirm the judgment of the court of appeals.

_____

Jane N. Bland
Justice

OPINION DELIVERED: May 1, 2020

---

[85] TEX. LOC. GOV'T CODE § 271.153(a)(1).